## FRED OPPERMANN, JR., BREWING CO. v. PEARSON.

(Supreme Court, Appellate Division, First Department.   January 24, 1902.)

EVIDENCE—ADMISSIONS—SUFFICIENCY.

 In an action to recover collections alleged to have been received and not accounted for by defendant's intestate in his capacity as plaintiff's cashier, the evidence was exclusively documentary, and consisted of an entry in the petty cash book kept by decedent, and two statements of the same date therewith, purporting to show the collections made by plaintiff's collectors. It did not appear who wrote these statements, or whether they were made before or after the cash book entry, but their totals were in the handwriting of decedent, and showed an excess over the amount of such collections as shown by the cash book entry. *Held*, that the statements could not be considered as admissions by decedent of the receipt of the excess therein shown over the amount of the cash book entry, and hence the evidence was insufficient to support a judgment for such excess.

Appeal from judgment on report of referee.

Action by the Fred Oppermann, Jr., Brewing Company against Annie Pearson, administratrix. From a judgment in favor of plaintiff, defendant appeals. Reversed.

See 73 N. Y. Supp. 541.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Eugene H. Pomeroy, for appellant.

Grant C. Fox, for respondent.

LAUGHLIN, J.  The action is brought to recover the sum of $1,031.29, alleged to have been received by appellant's intestate in his capacity as cashier for the plaintiff, and not accounted for or paid over. The deceased, Samuel W. Pearson, had been in the employ of plaintiff as its cashier for 12 years, and had exclusive charge of keeping the petty cash book. He continued to perform his duties until the 21st day of September, 1900, when he complained of not feeling well, and was driven home from the office in a carriage. He died four days thereafter. After the appointment of his administratrix, the respondent presented a claim against his estate. The claim was rejected, and subsequently the matter was referred to the referee, whose decision is brought up for review by this appeal. Five separate items of collections alleged to have been received by the deceased cashier were included in the claim presented. The referee, however, only allowed two, as follows: $800, moneys alleged to have been delivered to the cashier by the respondent's collectors for beer sold during the week ending September 8, 1900; and $159 on account of shortage from the amount shown to be on hand by the petty cash book. It is claimed by the appellant that the evidence was insufficient to warrant the allowance of these claims against the estate. We will consider first the evidence relating to the item of $800. It is exclusively documentary. No testimony was given by any eyewitness to the delivery or transmission to the decedent of any money for that week's collections, nor is there any evidence of any verbal admission by him upon the

subject. The entry in the petty cash book kept by decedent shows, under date of September 8, 1900, that the amount of collections for the week was $6,940.14. It is claimed that the collections for that week which came into the hands of the decedent aggregated $7,740.14, or $800 more than the amount with which he charged himself by this entry in the petty cash book. This contention on the part of the respondent is based upon Exhibits 12 and 13 received in evidence upon the trial. Each of these exhibits is dated September 8, 1900, and was produced by respondent from its files. Exhibit 13 purports to be a tabulated statement of the collections for the week by each of 13 collectors for the respondent, whose names are given. Opposite the name of each is given in separate columns the amount collected for beer and the amount collected for war taxes. The names of the collectors and the figures in these respective columns were not in the handwriting of the decedent, but it does not appear who wrote them. The footings, however, were in his handwriting, as were also three other intervening columns of figures and their footings, headed, respectively, "Discounts," "Collection Expense," and "Customers' Expense." The totals of these three columns, the figures of which were in the handwriting of decedent, added together, aggregate the sum of $4,389.66. This amount, deducted from $12,129.80, the total shown by the decedent's footings of the first column of collections on the sale of beer, leaves a balance of $7,740.14. Exhibit No. 12 is wholly in the handwriting of the decedent. It appears to be a compilation of figures made from Exhibit 13, but in a different form. It purports to show first the total collections made by each collector, and, inasmuch as this includes discounts and customers' expenses, it may, we think, with greater accuracy be said to indicate the extent to which the accounts with respondent's patrons were satisfied, and not the actual amount paid to its collectors by them. It then shows opposite the character "a/c" figures corresponding with the total discounts and collection expenses shown in Exhibit 13 opposite the name of each collector respectively. It next shows opposite "Customers' Exp." figures corresponding with those shown in the column in Exhibit 13 under the head "Customers' Expense." Then opposite "Cash" it shows the difference between the amount so designated as collections and the aggregate of the two items "a/c" and "Customers' Exp." It is claimed on the part of the respondent that these exhibits constitute an admission on the part of the decedent of the receipt by him of $7,740.14 in cash from the collectors for the week ending September 8, 1900. It is manifest that this deduction cannot be drawn without utterly disregarding the entry made by the decedent in the petty cash book, which was to be a permanent record. It does not affirmatively appear whether Exhibits 12 and 13 were prepared before he made the entry in the petty cash book. In the absence of evidence on that point, however, the inference would be that these exhibits were merely preliminary statements compiled by the cashier prior to making an entry in the books of record. We think the plaintiff failed to establish the right to recover this item of $800 by a fair preponderance of the evidence. The

evidence, taken as a whole, is quite as susceptible of the construction that, so far as Exhibit 13 is in the handwriting of the decedent, it was a mere calculation based upon the written reports of the collectors in advance of the delivery of any money by them to him. The same is true of Exhibit No. 12. Upon making an entry in the cash book of moneys received, that doubtless constituted an admission that decedent received the money with which he thus charged himself; but, as has been seen, by the entry made in the petty cash book he did not charge himself with the receipt of the $800 in question. The evidence with reference to the item of $159 is quite indefinite and unsatisfactory. The views already expressed, however, require a reversal of the judgment, and as, upon a new trial, the case as to this item may be strengthened, it is unnecessary to decide definitely whether the claim therefor against his estate could be sustained upon the evidence now in the record.

The judgment should be reversed, and a new trial granted before another referee, with costs to appellant to abide the event. All concur.